LESTER MEADOR v. THE STATE.

No. 2721.   Decided January 21, 1914.

**1.—Malicious Mischief—Injuring Fence of Another—Evidence—Intent.**

The want of intent is relevant in a prosecution for injuring the fence of another and it is reversible error to exclude testimony showing a want of intent to injure.

**2.—Same—Charge of Court—Principal.**

Where, upon trial of injuring the fence of another, the evidence raised the issue as to whether defendant participated in the act of taking down the gate of such fence and if he did anything, assisted the person who did so in carrying the gate away a few steps and hiding it, the court should have submitted defendant's requested charge to instruct the jury to acquit defendant if he only assisted in carrying away the gate after it was taken down by another.

Appeal from the County Court of Erath. Tried below before the Hon. A. P. Young.

Appeal from a conviction of injuring the fence of another; penalty, a fine of $10.

The opinion states the case.

*Cox & Daniel,* for appellant.—On question of innocent intent: Woodward v. State, 33 Texas Crim. Rep., 554.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—This conviction was for malicious mischief. The particular allegation upon which the conviction occurred was that appellant broke, injured and pulled down the fence of Frank Driskill. The evidence shows that five youngsters were out opossum hunting in February, and in their perambulations came to a gate set in a fence belonging to Driskill. The gate was open. One of the party, Roy Ramsey, made the remark either to appellant, or appellant and the others present, "Let us take the gate down." Roy Ramsey himself testified that when they came to the gate of Driskill, "I said to Lester Meador,

let us take down the gate and hide it, and I took hold of the gate and pulled it down, and Lester Meador took hold of the gate and helped me carry it away and hide it. . . . I took hold of the gate and lifted it off the thing it was setting on, and pulled it out of the ring and put it down." He further testified after this occurred Lester Meador assisted him in carrying the gate some twenty or thirty yards where they hid it. Frank Driskill testified he was acquainted with the boys out hunting that night; lived within a mile from where defendant lived, with his mother, and all the boys lived in the immediate neighborhood. He recalled the incident of the gate being taken down in February; says the gate was in the lane, and "when I had stock in another pasture I kept the gate closed, but the gate stood open much of the time. When I found the gate some time afterward it was not injured in any way." The defendant testified in his own behalf with reference to their hunting excursion and incidental matters. Coming to the immediate transaction he says when they reached the gate Roy Ramsey said, "Let's take down the gate and hide it and have some fun out of Frank Driskill, and Roy Ramsey took hold of the gate and lifted it and pulled it out of the ring around the post at the top, and laid it down, and then I took hold of the gate with him and we took it and put it over the fence and went on. I did not tell Roy Ramsey to take the gate down, and did not take hold of the gate until after Roy Ramsey had taken the gate down. We took the gate down to have some fun out of Frank Driskill, the owner of the gate, and to play a Christmas trick upon Frank Driskill. We did not injure the gate in any way." This is a sufficient statement of the facts to bring in review the matters sought to be revised.

Appellant proposed to prove by other witnesses who were present the remarks made by Roy Ramsey at the time of taking the gate down, and why he took it down. This was excluded by the court. We are of the opinion this testimony was admissible. It was made at the time and in connection with Roy Ramsey's movement in taking the gate down, and why he took it down. It is true, the defendant in person was permitted to testify to these facts, but each of the other witnesses who were present and knew of the matter were as competent to testify to these res gestae matters as was the appellant. Where the intent to injure enters into or forms a part of the offense, any legitimate testimony that goes to show the intent or want of it is necessarily relevant, pertinent and admissible. This testimony should have been admitted.

Another matter is presented, which we think shows error. Appellant not participating in taking the gate down, the State sought his conviction upon the theory that he was present aiding, encouraging and advising Ramsey in taking the gate down. If appellant did not so encourage Ramsey, then he would not be guilty under these facts. To meet this appellant requested the court to instruct the jury that if he only assisted Ramsey in carrying away the gate he would not be guilty of breaking the fence, if Ramsey took down the gate before appellant had any connection with it. This question was presented by the tes-

timony; in other words, the case seems to have occurred this way under the facts: that Ramsey took down the gate, and after he took it down appellant assisted him in carrying the gate off a few steps and hiding it. If Ramsey was guilty of taking down the gate, and appellant encouraged him, aided him or advised him to do so, he would be as guilty as Ramsey, and if Ramsey is guilty appellant would be. If he did not advise him to take down the gate, but only assisted him subsequently in hiding it, he would not be guilty of pulling down the gate. If the act was complete at the time appellant assisted in carrying the gate away and hiding it, the fact of hiding and his assisting in hiding it would not constitute injury to the fence or pulling it down, or breaking it. It is evident from the facts that the boys did not intend to injure the fence. Driskill so understood it from his testimony. They were his friends, and the fence was not injured, and the testimony indicates it was not the first time they had played these pranks upon Driskill, and so far as Driskill's evidence is concerned, without any objection on his part.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*